Davis, J.
These cases require a decision of the question whether “An act for the Suppression of Mob Violence,” passed April 10,1896 (92 O. L., 136), is constitutional.
It is argued that the provisions of this statute contravene article one of the fourteenth amendment to the constitution of the United States, and are also repugnant to the constitution of Ohio; because they violate the right of trial by jury, because they authorize the taking of property without due process of law, because they are a violation of private rights, of property, because they are an exercise of judicial functions by the legislature, and because the object *344 and purposes of the statute are not within the taxing power.
In the ardor of attack, it seems to have been overlooked that the constitution extends its protection over individuals, as well as counties and municipal corporations. Even a criminal has some rights which cannot be forfeited. Every person who is accused of crime, is guaranteed a fair trial; and he cannot be deprived of life or liberty without due process of law. The faith of the body politic is pledged to make good the constitutional guarantees to the individual. To the counties and municipal corporations are delegated, in large measure, the duties of local administration. Within their jurisdiction they stand in the place of the state, in enforcing the laws, and in protecting the life, the liberty and the property of the citizen. If a large number of the people of any county become imbued with the lynching spirit, or negligent and indifferent to the due and orderly enforcement of the laws, so that lawless men may act with impunity, then there is no course for the state to take, other than to intervene and directly protect the individual, as well as to enforce upon the community the observance of good order/
The power of the state to do this cannot well be questioned. What is known as the police power is based on the public safety, the public health and morals, and the general welfare; and it is, therefore, as broad as these conditions may require. In this respect, as in other respects, the power of the legislative branch of the state government is plenary, except as it may be specifically and clearly limited in the constitution. Within these limitations the legislature may prescribe such laws, sanctioned by fines, penalties, forfeitures or damages, as will enforce the observance of the peace and dignity of the state, and compensate the injured party; for, unfortunately the *345 public conscience is oftentimes more easily quickened in this way than by teaching and persuasion.
Now as to the alleged violation of the right of trial by jury, it may well be doubted whether counties and municipalities have any such absolute right of trial by jury that they may complain of its infringement by the legislature. They are creatures of constitutional and legislative enactment. They have only such powers and privileges as are given them, and these powers and privileges may, in general, be modified or taken away.
But cases like these need not be disposed of on that ground. The contention is that the statute deprives the defendant of the right to have the amount to be paid assessed by a jnry as damages. A county or municipality can no more complain of this statute as an infringement npon the right of trial by jury, than the man who has been tried by a jury and found guilty of a crime, can complain that the law under which he is tried does not provide that the jury shall assess the amount of his fine, or adjudge the extent of his imprisonment. The primary purpose of the legislature was punishment and correction. The expressed object of the law is “the suppression of mob violence.” That the legislature might, in the exercise of the police power, fix the amount of a penalty without the intervention of a jury was lo.ng ago decided by this court in Cincinnati, Sandusky and Cleveland Railroad Company v. Cook, 37 Ohio St., 265. And this being so, it is of no concern to the party paying the penalty, to whom the state, in its sovereignty, may pay it. It may well, as under this statute, turn the money over to those who suffer by the act of lynching. In this respect, it makes no difference whether in the statute it be called penalty, or compensation, or damages. Nor does it alter the case that the amount is fixed, that is, determined by the statute, as in this case; or Oiat it is to be found by a jury. Nor yet does it *346 matter that it is declared to be “for the suppression of mob violence,” as in this case, or “for compensating parties whose property may be destroyed in consequence of mobs or riots,” as in the statute which was upheld in Darlington v. The Mayor, etc., 31 N. Y.. 187; because the imposition of any amount by authority of the state is, in either case, essentially penal and corrective in its nature. The party paying the money so recovered, that is, as a penalty, has no right to complain that the sovereign pays it over to the person injured, or pays it for the benefit of the minor children of a person suffering death by lynching, or to the next of kin of such person; nor that the sovereign provides that “such recovery shall not be regarded' as a part of the estate of the person lynched, nor be subject to any of his liabilities.” Nor is it a matter which can be put in issue for trial by jury; for the legislature does not authorize, nor attempt, a compensation of the injury according to the measure of the injury, to be settled on an inquirj of damages.
We have dwelt on this phase of the law more than we have thought necessary, because it is the source of the main contention in these cases. We shall very briefly advert to the remaining questions presented for our consideration.
In the nature of things, the limitations of the taxing power are not ordinarily, nor necessarily, limitations on the police power; but the matter is set at rest for the cases at bar, by the constitution itself, which provides as follows: “The commissioners of counties, the trustees of townships, and of other similar boards, shall have such power of local taxation, for police purposes, as may be prescribed by law.” Const., Art. x, See. 7. This court held in Sessions v. Crunkilton et al., 20 Ohio St., 349, 358, that when local taxation is exercised for purposes which are demanded by, or are conducive to, public *347 health, convenience, or welfare, it is within the constitutional meaning of “police purposes.”
From what has been said, it will appear that this statute does not authorize, nor attempt, the taking of private property for a private use, nor even the taking of private property for a public use in the exercise of the right of eminent domain. It authorizes the recovery of a penalty against the county, and authorizes an order to be made on the commissioners of the county, to include the same in the next succeeding tax levy. This, as we have seen, the legislature has power to enact, under the general police power, the general taxing power, and Sec. 7, Art x, of the constitution. Hence section 19 of article. 1 of the constitution does not apply.
Again, this legislation is not an exercise of judicial power; because it does not adjudicate any transaction, case, or controversy, which arose before its enactment, and of which the judicial tribunals might have been cognizant. It provides what shall be the law, binding upon the judicial department, after its enactment; and is not, in any sense, a trespass upon the province of the courts.
Having disposed of the foregoing objections to the statute, Ave assume that the contention that it provides for the taking of property without due process of laAV, is already sufficiently answered. Many other questions have been raised and discussed. They are all such as might well have been addressed to the legislature; but they cannot be considered here. We conclude that the act is constitutional.
On the trial of the case of Church, Adm., etc., v. The Commissioners of Champaign County, in the common pleas court, the court charged the jury in substance, that if the collection of persons who lynched Mitchell, had assembled without any unlawful purpose, and afterwards committed the acts of violence Avhich resulted in the death of Mitchell, the plain *348 tiff could not recover, and the verdict should be for the defendant.
The court afterwards made an explanation of this instruction; but the explanation did not explain, especially since the court instructed the jury that such unlawful purpose or design may be formed either before or at the time of assembling, “or it may be formed with the agreement of mutual assistance after they have assembled,” and that, “no formal or express agreement need be proved to establish such unlawful purpose, but it may be inferred from all the facts and circumstances proved in the case and its existence and the time of its formation are questions of fact for the jury.” And the court not only refused to instruct the jury, as requested by the plaintiff, that the fact that Mitchell was lynched was evidence that the individuals who lynched him intended to lynch him; but instead, the court charged the jury that the lynching of Mitchell might be considered as evidence of the unlawful intent; and also charged that such lynching did not raise a presumption of law that they assembled with that intent. The charge when all taken together, seems, very plainly, to have told the jury that if the crowd came together with an innocent purpose, and afterwards lynched Mitchell, they would not be a mob unless they had specifically agreed to be' a mob, after they had assembled. This charge is not merely seriously misleading. It is erroneous. It is an ancient doctrine in the criminal law, as old as Hale’s Pleas of the Crown, at least, that, although the assembly was lawful, the persons assembled might unite in unlawful conduct and thus become rioters.
In Caldwell v. Commissioners of Cuyahoga County, a demurrer to the petition was sustained in the court of common pleas, and the petition was dismissed. This judgment was affirmed by the circuit court. Besides the constitutional objections which we have already considered, the counsel for the commissioners *349 urge that the petition is defective, because the plaintiff therein avers that he was struck by “a heavy glass insulator thrown at him by one of the mob,” and was “short through the leg with a leaden bullet, fired from a revolver in the hands of some of the mob.” It is argued that as the shooting was done by a, pistol in the hands of one person, and as the glass insulator was thrown by one person, it does not appear that the specific acts which occasioned the plaintiff’s injuries were the acts of a “collection of individuals” or a “mob.”
We do not think that there is much force in this argument. It is clearly alleged in the petition that the plaintiff and his fellow workmen were assaulted by a collection of individual's, who had assembled‘/or an unlawful purpose, and tried to exercise correctional power over the plaintiff and his fellows, without any authority of law; and that thus and thereby the plaintiff suffered a lynching at the hands of said mob.
The petition contains a sufficient statement of a cause of action against the county, under the statute in question; and the details which are set forth in the petition are not inconsistent with the more general averments contained therein. The demurrer should have been overruled. We have carefully considered all of the arguments and authorities which counsel have submitted, and we are thoroughly satisfied with the foregoing conclusions.
In Commissioners v. Church, administrator of Mitchell, the judgment of the circuit court is

Affirmed.

In Caldwell v. Commissioners, the judgment of the circuit court and the judgment of the court of common pleas, are Reversed.